

3/15/21

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**IN HUNTINGTON**

| IN RE: | CASE NO. 3:19-bk-30130 |
|---|---|
| GREGORY WAYNE LATTEA and ANGELA LEE LATTEA, | CHAPTER 7 |
| Debtors. | JUDGE B. MCKAY MIGNAULT |

## MEMORANDUM OPINION AND ORDER

Pending are two motions: 1) Vanderbilt Mortgage and Finance, Inc.'s ("Vanderbilt") Motion for Relief from Stay (the "MFR") [dckt. 37]; and 2) the Latteas' Motion to Voluntarily Dismiss ("MTD", and together with MFR, the "Motions") filed on February 24, 2020 [dckt. 108]. The Latteas filed an Objection to the MFR [dckt. 51]. Vanderbilt filed a Response to the MTD on March 9, 2020 [dckt. 113] and followed up with a Notice of Supplemental Authority on November 25, 2020 [dckt. 134]. The Motions came before the Court for final hearings on March 25, 2020 (the "Hearing"), and the Court took the matters under advisement after hearing presentations from the parties. All briefing having been received, this matter is ripe for adjudication.

I.

A.   **Facts and Procedural History**

In October of 2018, the Latteas purchased a 2006 Fleetwood Mobile Home (the "Fleetwood"). Vanderbilt provided financing to the Latteas for the purchase in the amount of $99,107.55. Pursuant to a Consumer Loan Note and Security Agreement dated October 24,

2018 (the "Note"), the Latteas granted Vanderbilt a security interest in the Fleetwood and in land located at 37 Spyglass Court, Poca, WV (together, with the Fleetwood, the "Property"). Under the terms of the Note, the Latteas promised to make two-hundred and seventy-six (276) payments of $957.44 each to Vanderbilt. Vanderbilt perfected its interest in the Fleetwood by filing a notation of lien on the certificate of title and in the land by recording a deed of trust in Putnam County.

On April 4, 2019, the Latteas filed for Chapter 7 bankruptcy protection. In the schedules, they valued the Property at $27,826 and listed Vanderbilt's claim as $98,936.22. The Chapter 7 Trustee filed a Report of Assets on May 20, 2019. Vanderbilt filed its initial Motion for Relief on June 4, 2019, but withdrew the motion almost immediately afterwards, on June 13, 2019. Thereafter, on August 20, 2019, the MFR before the Court was filed.

In the meantime, on July 17, 2019, the Court approved an Application by the Chapter 7 Trustee to employ Willard Clinton Carte (counsel to the Latteas) and Mountain State Justice, Inc., as Special Counsel to the Trustee [dckt. 25]. Thereafter, the Chapter 7 Trustee and the Latteas, jointly, moved to withdraw the reference from this Court to the Southern District of West Virginia.

On the same day that the Latteas filed bankruptcy, they had also filed a complaint against Vanderbilt in the Circuit Court of Putnam County, alleging fraud, unconscionable inducement, illegal transaction, and breach of warranty (the "Putnam County Action"). On May 13, 2019, the Defendants in that proceeding (including Vanderbilt) filed a Notice of Removal of the Putnam County Action to the United States District Court for the Southern District of West Virginia (civil action no. 3:19-cv-00375) (the "District Court Action"). Eventually, pending in the District Court Action were four motions: 1) Vanderbilt's Motion to Dismiss for Lack of

Standing; 2) Vanderbilt's Motion to Compel Arbitration and Stay Remaining NonArbitrable Claims; 3) Vanderbilt's Motion to Refer Case to Bankruptcy Court; and 4) the Latteas' Motion to Withdraw the Reference from the bankruptcy court.

On January 8, 2020, the Honorable Robert C. Chambers of the United States District Court for the Southern District of West Virginia issued a memorandum opinion and entered an order granting Vanderbilt's Motion to Refer Case to Bankruptcy Court, denying the Latteas' Motion to Withdraw the Reference, and denying as moot the other two motions.

Back in bankruptcy court, the MFR was taken up again. Following a hearing on January 31, 2020, the parties were asked to submit a status report on or before February 21, 2020. Then Vanderbilt and the Latteas each submitted their own status report, but the gist of both was the same: although the parties conferred for some time, they could not come to any agreement, and it became necessary for the Court to adjudicate the MFR. The Latteas, in their report, stated that they wished to hold a jury trial on the disagreement between themselves and Vanderbilt. Vanderbilt, in its status report, consented to the jurisdiction of the Bankruptcy Court and requested that this Court rule on the MFR.

Almost immediately following submission of the status reports, the Latteas filed their MTD. Vanderbilt responded thereafter. The Court set a hearing for March 23, 2020. At that hearing, the Latteas reiterated their intention to voluntarily dismiss their case. Vanderbilt indicated that it did not object to dismissal of the case, but asked that dismissal be accomplished with terms and conditions protective to Vanderbilt. The Court continued the MTD and the MFR and provided the parties a chance to come to an agreement regarding dismissal.

On March 24, 2020, the parties submitted a status report stating that they could not agree on the terms of dismissal. On March 25, 2020, the Court held a final hearing on the matters, and took the MTD and the MFR under advisement.

### B.   The Parties' Arguments

Before delving into the specific arguments of the parties in this matter, this Court would like to note that the District Court Action was closed immediately after entry of the memorandum opinion and order on January 8, 2020. There is no longer any matter pending in the District Court.

#### 1.   The MFR

Vanderbilt asserts in its MFR that the Latteas are in default on their mortgage. The payoff (as of the filing of the MFR) was $105,080.67. Vanderbilt alleges in its motion that the Latteas are in arrears as of March 1, 2019. In the MFR, Vanderbilt notes that the Latteas filed a Statement of Intention dated April 4, 2019, in which they asserted their intention to surrender the Property.

Vanderbilt argues that, under 11 U.S.C. § 362(d)(2), it is entitled to relief from the automatic stay because: (1) the Latteas do not have any equity in the property; and, (2) the Property is not necessary for a reorganization because the Latteas filed a Chapter 7 liquidation. Additionally, Vanderbilt argues that it is entitled to relief from the automatic stay for "cause," pursuant to § 362(d)(1). Specifically, Vanderbilt pointed to the fact that, while the Property is continuing to depreciate, Vanderbilt is not receiving any kind of adequate protection. The Latteas, in opposition, explain that they had filed a suit against Vanderbilt in the Circuit Court of Putnam County which has been removed to the United States District Court for the

Southern District of West Virginia.  At the time of these assertions, the District Court Action was still pending.  Additionally, the Chapter 7 Trustee had employed special counsel to represent the Trustee and the bankruptcy Estate in the District Court Action. The Latteas argued that relief should not be granted until the conclusion of the District Court Action.

### 2. The MTD

The Latteas filed their MTD after the District Court Action was sent back to this Court on January 8, 2020.  The Latteas' request in the MTD is two-fold: firstly, that their Chapter 7 proceeding be dismissed under 11 U.S.C. § 707 and, secondly, that their civil claims against Vanderbilt be moved to the United States District Court for the Southern District of West Virginia via withdrawal of the reference.[1]  In the MTD, the Latteas accuse Vanderbilt of concerted efforts to avoid timely resolution of their civil claims before a jury.  Specifically, they assert that Vanderbilt has refused to participate in depositions and respond to discovery, and that they may be engaging in malfeasance regarding documents in the case.  The Latteas state that they simply seek to dismiss their Chapter 7 proceeding so they can prosecute their claims in District Court or State Circuit Court.

Vanderbilt responded initially by first noting that the Latteas have expended significant effort in avoiding adjudication by this Court of their claims against Vanderbilt.  It asserts that dismissal is inappropriate and that legal grounds exist to deny the MTD.  Notably, it calls upon 11 U.S.C. 707(b)(1), which allows for dismissal only if the Court finds that the relief would not

---

[1] The Court notes that this request is unfeasible.  If the Court dismisses the Latteas bankruptcy case, there is no "separate civil portion" to send to the District Court.  Once the bankruptcy case is dismissed, there is nothing lingering in this Court.  If one divides nothing into two parts, that person is still left with nothing. There is no separate adversary proceeding regarding the Latteas claims against Vanderbilt that could be severed and withdrawn to the District Court.  Therefore, this portion of the Latteas request is considered a literal impossibility and the Court denies it summarily.

be an abuse of the Chapter 7 provisions. Vanderbilt argues that the Latteas are making temporary use of the bankruptcy process and are abandoning that process now that it has become inconvenient. Vanderbilt accuses the Latteas of causing legal prejudice to creditors in this case. Moreover, Vanderbilt highlights issues with the Latteas' request to withdraw the reference with regards to their civil action; namely, the fact that the civil claims are not part of a separate adversary proceeding in this matter and that, in asking to send the civil matters back to the District Court, the Latteas are requesting from this Court an opinion in direct contravention of Judge Chambers' opinion remanding the matters. Finally, Vanderbilt asks this Court to deny dismissal and rule on its Motion to Compel Arbitration.[2]

In its Supplement, Vanderbilt simply provides additional authority to support its "Motion to Compel Arbitration."

## II.

### A. The MTD

The Court will begin with a discussion of the MTD, since resolution of the MTD may render the MFR moot.

#### 1. Applicable Law

Dismissal of a Chapter 7 case is governed by 11 U.S.C. § 707. Under § 707(a), "[t]he court may dismiss a case under this chapter only after notice and a hearing and only for cause . .

---

[2] This Court notes that this second part of Vanderbilt's request is simply impossible. There is no pending Motion to Compel Arbitration before this Court. The only Motion to Compel Arbitration was filed in the District Court Action and was denied as moot in Judge Chambers' January 8, 2020 opinion. There is no conceivable way that this Court can grant a motion that is not pending before it. To the extent necessary, the Court denies any request of Vanderbilt to compel arbitration at this time because there is, plainly speaking, no motion to adjudicate.

.".[3]  11 U.S.C. § 707(a).  The section goes on to list three examples of "cause:" (1) unreasonable delay that is prejudicial to creditors; (2) nonpayment of fees or charges; and (3) failure to file certain information within allotted time periods.  *Id.*  This list is not exclusive.  *In re McCullough*, 229 B.R. 374, 376 (Bankr. E.D. Va. 1999); *In re Hopper*, 404 B.R. 302, 307 (Bankr. N.D. Ill. 2009).

This section clearly differs from the dismissal provisions in Chapter 13 cases in that, in Chapter 7 cases, the Court "may" dismiss the case, whereas in Chapter 13 cases, the Court "shall" dismiss a case if so requested by the debtor. 11 U.S.C. § 707(a).; 11 U.S.C. § 1307(b); *see also Hopper*, 404 B.R. at 306 ("A Chapter 7 debtor does not have an absolute statutory right to voluntarily dismiss a Chapter 7 bankruptcy petition like a Chapter 13 debtor has . . . .").  "A person who files a bankruptcy petition not only invokes the protection of the Court but also assumes the responsibilities imposed by bankruptcy law," and these responsibilities include "the duty to account for the disposition of assets and the obligation to submit to an examination by the Trustee and creditors." *In re Martin*, 30 B.R. 24, 26 (Bankr. E.D.N.C. 1983).  "A debtor may not avoid these responsibilities by asking that the bankruptcy case be withdrawn.  Permitting that would be to allow the debtor . . . to use the bankruptcy court as a haven so long as it is convenient and to flee from it whenever scrutiny by creditors becomes uncomfortable." *Martin*, 30 B.R. at 26.

Some courts have questioned whether § 707 even applies in situations where the debtor attempts to voluntarily dismiss his or her own case. *McCullough*, 229 B.R. at 376.  "Although § 707(a) does not expressly refer to a voluntary dismissal by the debtor, courts routinely apply it to

---

[3] The Latteas simply request dismissal under § 707 and do not specify a subsection. Vanderbilt's argument in its response, confusingly, revolves around § 707(b), which does not apply to the instant situation.  Thus, the Court will evaluate the Latteas request under the appropriate section, which is § 707(a).

such a motion." *Hopper*, 404 B.R. at 306 (citing *Schwartz v. Gelter (In re Smith)*, 507 F.3d 64, 72 (2d Cir. 2007), *Turpen v. Eide (In re Turpen)*, 244 B.R. 431, 434 (8th Cir. B.A.P. 2000), *In re Watkins*, 229 B.R. 907, 909 (Bankr. N.D. Ill. 1999)).

Dismissal under § 707(a) is a decision which "falls squarely within the sound discretion of the Court . . .". *McCullough*, 229 B.R. at 376. The burden of proving cause for a voluntary dismissal rests on the debtor. *Hopper*, 404 B.R. at 307 (citing *Sicherman v. Cohara (In re Cohara)*, 324 B.R. 24, 28 (6th Cir. B.A.P. 2005) and *In re Jabarin*, 395 B.R. 330, 337 (Bankr. E.D. Pa. 2008)). Dismissal is "a serious matter" and the "key decision . . . is whether the dismissal is in the best interests of the creditors and the debtor." *McCullough*, 229 B.R. at 376 (citing *In re Williamsburg Suites, Ltd.*, 117 B.R. 216, 218 (Bankr. E.D. Va. 1990) and *In re Price*, 211 B.R. 170, 172 (Bankr. M.D. Pa. 1997)); *see also Cohara*, 324 B.R. at 28 ("A core issue in determining whether the Debtor as established cause is whether the dismissal will prejudice the creditors."). In other words, "[a] voluntary dismissal will normally be denied when the dismissal will cause some plain legal prejudice to the debtor's creditors." *McCullough*, 229 B.R. at 376 (citing *In re Carroll*, 24 B.R. 83, 86 (Bankr. N.D. Ohio 1982); *Hopper*, 404 B.R. at 307). Legal prejudice, specifically, "is found to exist where assets which would otherwise be available to the creditors are not available because of the dismissal." *McCullough*, 229 B.R. at 376 (citing *In re Komyathy*, 142 B.R. 755, 757 (Bankr. E.D. Va. 1992)); *Hopper*, 404 B.R. at 307). And, even if a court finds cause for voluntary dismissal, the relief may still be denied if "there is a showing of prejudice to creditors." *Hopper*, 404 B.R. at 307 (citing *Turpen*, 244 B.R. at 435). Creditor prejudice can be incurred "if the motion to dismiss is brought after the passage of a considerable amount of time and they have been forestalled from collecting amounts owed to them." *Turpen*, 244 B.R. at 435. Furthermore, "[a]bsent court oversight of payment [of

creditors by the debtor], creditors are prejudiced," at least in part because a debtor "has limited income and resources and there is no guarantee that creditors will receive payment outside of the bankruptcy process." *Hopper*, 404 B.R. at 310 (quoting *In re Fulton*, 339 B.R. 698, 701 (Bankr. N.D. Iowa 2006) and *Turpen*, 244 B.R. at 434).

"Cause" is a nebulous term, found often in the Code. In situations involving § 707(a), the ultimate determination requires a "balancing of the interests of the debtor and the creditors." *Hopper*, 404 B.R. at 307 (citing *Watkins*, 229 B.R. at 909 and *Hickman v. Hana (In re Hickman)*, 348 B.R. 832, 841 (9th Cir. B.A.P. 2008)). Generally, for a motion to dismiss under § 707(a), courts have considered several factors:

> (1) whether dismissal is in the best interest of the debtor;
> (2) whether dismissal is in the best interest of the creditors;
> (3) whether dismissal would result in an abuse or manipulation of the system; and
> (4) whether dismissal is justified by compelling equitable principles.

*Hopper*, 404 B.R. at 308 (citing *Watkins*, 229 B.R. at 909 and *In re Schwartz*, 58 B.R. 923, 925-26 (Bankr. S.D.N.Y. 1986)). Specifically, though, when evaluating voluntary motions to dismiss filed by debtors, courts look to slightly different factors:

> (1) whether all creditors have consented;
> (2) whether the debtor is acting in good faith;
> (3) whether the dismissal would result in a prejudicial delay in payment;
> (4) whether dismissal would result in a reordering of priorities;
> (5) whether there is another proceeding through which payment of claims can be handled; and
> (6) whether an objection to discharge, an objection to exemptions, or a preference claim is pending.

*Hopper*, 404 B.R. at 308 (citing *Turpen*, 244 B.R. at 434). Regardless of these factors, cases such as this should be "resolved on a case-by-case basis in the context of the specific facts

presented." *Hopper*, 404 B.R. at 308 (quoting *Jabarin*, 395 B.R. at 341) (internal quotation marks omitted).

Several findings from other courts are instructive in determining situations which may rise to the level of "cause" for voluntary dismissal of a Chapter 7 case. Dismissal of a voluntary Chapter 7 in order to re-file a new case does not meet the standard of cause for dismissal. *Carroll*, 24 B.R. at 87 (citing *In re Kimball*, 19 B.R. 300, 302 (Bankr. D. Me. 1982)). Similarly, a debtor's desire to dismiss and re-file a new petition for the purpose of listing post-petition creditors is not enough to warrant allowance of voluntary dismissal. *In re Poirier*, 16 B.R. 691, 695 (Bankr. D. Conn. 1982); *see also In re Compston*, 161 B.R. 636 (Bankr. N.D. Ohio 1993). Claims of attorney negligence, lack of representation, regret, and errors in judgment are not sufficient for voluntary dismissal in Chapter 7 cases. *Hopper*, 404 B.R. at 308 ("Having voluntarily submitted herself and her assets to the jurisdiction of the Bankrupty Court, the [Debtor's] regret over that decision . . . does not constitute 'cause' justifying dismissal of her case.") (quoting *In re Taylor*, No. 01-84995, 2002 WL 32001700, at *2 (Bankr. C.D. Ill. Mar. 27, 2002)); *In re Martin*, 30 B.R. 24 (Bankr. E.D.N.C. 1983); *Kimball*, 19 B.R. 300, *In re St. Laurent*, 17 B.R. 768 (Bankr. D. Me. 1982). Furthermore, a debtor's ability to pay debts outside of bankruptcy does not constitute cause, an assertion which is supported by the legislative history of § 707(a). *Hopper*, 404 B.R. at 308-09 (citing a list of supportive cases); *see also Cohara*, 324 B.R. at 27. Solvency, in and of itself, is not an adequate reason for dismissal. *Turpen*, 244 B.R. at 434. Following from that, a debtor who is set to receive a large inheritance which may pay off all of her creditors outside of bankruptcy may not be eligible for a voluntary discharge; if the inheritance is property of the bankruptcy Estate, it would be disbursed to creditors through the Chapter 7 Trustee and if the case were to be dismissed, the creditors would "lose the guarantee of

repayment." *Komyathy*, 142 B.R. at 757 (discussing the holding in *In re Hand*, 18 C.B.C. 206 (D. D.C. 1978)). Finally, the simple fact that the debtor may derive a benefit from dismissal is not enough to constitute "cause." *Hopper*, 404 B.R. at 307 (quoting *Watkins*, 229 B.R. at 909).

### 2.  Analysis

The Latteas state very little in their MTD other than the fact that Vanderbilt has been actively attempting to escape any attempt by the Latteas to position controversy before a civil jury in District Court. The Latteas express that they would like to pursue their remedies against Vanderbilt before a District Court or state Circuit Court (and, specifically, before a jury in either of those fora); that is their only justification and the only possible cause they might have for dismissal.

Vanderbilt vehemently objects, arguing that the Latteas have no good faith basis to dismiss, that they have abused the automatic stay and the bankruptcy process altogether, that dismissal is unfair to creditors, and that the Latteas impermissibly ask this Court to overrule Judge Chambers. It is unclear how much of Vanderbilt's arguments address the governing legal standards, but this Court will attempt to suss out the necessary information to make a proper adjudication of the MTD. This Court will apply the factors laid out in the *Hopper* and *Turpen* cases which apply specifically to debtors requesting voluntary dismissal under § 707(a).

Other than Vanderbilt, no party has expressed an opinion on the MTD. The Chapter 7 Trustee, the United States Trustee, and all other creditors have remained disconcertingly silent. Vanderbilt is by far the largest creditor among the five listed in the Latteas' schedules. Given that, technically, zero creditors have consented to the MTD, and the one that has responded has passionately objected, this factor weighs in favor of denial.

The Latteas' good faith is questioned by Vanderbilt, extensively.  However, this Court is not certain that the Latteas' actions have risen to the level of "bad faith."  There have been no allegations of fraudulent transfers, preferential payments, insider dealings, or concealment of assets.  The Latteas have not filed for bankruptcy within the past eight years.  It does not appear that the Latteas filed their Chapter 7 case on the eve of a foreclosure or to thwart creditors' state court efforts to seek relief against their collateral.  Debtors often file cases in bankruptcy court and subsequently assert actions against their mortgage lenders.  It is indeed not uncommon to see debtors seeking redress against entities such as Vanderbilt on the same bases as the Latteas while they are in in bankruptcy.  Yes, the Latteas sought to remove their claims to District Court.  Yes, they indicated in their schedules originally that they intended to surrender the Property and they changed their minds.  Yes, the Latteas benefited from the automatic stay.  Yes, Vanderbilt has expended time and effort in prosecuting its motions in this Court and in the District Court.  Those are events that happen *all the time* in bankruptcy proceedings.  One of the most important and vital aspects of the Bankruptcy Code is the automatic stay.  It is designed, in its essence, to be used by debtors to protect themselves from their creditors.   If this Court were to find that the specific facts in this case constituted bad faith on the part of the Latteas, then almost every debtor in the district may be guilty of acting in bad faith.  The Latteas may not have exhibited model debtor behavior, but their actions have not risen to the level of bad faith.  Accordingly, this factor weighs in favor of granting the MTD.

Neither party addresses any potential delay in payment that might be caused by dismissal.  At this point in the Chapter 7 case, the Chapter 7 Trustee has filed a Report of Assets, which appears to be based upon the Latteas' assertion of claims against Vanderbilt.  If the Chapter 7 proceeding is dismissed, this Court assumes that, while Vanderbilt would likely pursue its state

court remedies, the Latteas intend to re-file suit against Vanderbilt. On the other hand, if the Chapter 7 proceeding remains open, Vanderbilt has a pending MFR. If that MFR is granted, Vanderbilt would be able to claim its collateral shortly thereafter. Additionally, for any creditor in this case, the prospect of an orderly and Code-based liquidation through the Chapter 7 Trustee is likely preferable to piecemeal fighting in state court over the most minimal of assets. This factor weighs in favor of denying the MTD.

Again, neither party addressed any concerns with the re-ordering of priorities, should dismissal be granted. As always, orderly dispersion through the Chapter 7 Trustee would guarantee the proper order of priorities. Dismissal would lead to state court litigation in which the creditors would simply fight for their slice of the ever-diminishing pie. Vanderbilt's position, as a secured creditor, however, would not change. There do not appear to be any unsecured priority creditors in the case. Therefore, it does not appear that dismissal would affect the order of priorities, as the creditors are either secured or completely unsecured and their status would not differ inside or outside of the bankruptcy process. Therefore, this factor weighs in favor of dismissal.

As with several of the foregoing factors, neither party addressed the availability of another proceeding through which payment of claims could be handled. Outside of this bankruptcy process, the only manner in which the Latteas' assets could be disbursed would be through a state receivership action. However, there is no guarantee that a receiver would be appointed because West Virginia law states that "[a] court of equity *may*, in any proper case pending therein, in which . . . there is danger of the loss or misappropriation" of funds or property, appoint a special receiver. W. Va. Code § 53-6-1. Thus, there exists only the mere,

and small, possibility of another process by which payment of the Latteas' claims could be achieved. Therefore, this factor weighs in favor of denying dismissal.

The final factor requires the Court to assess whether any objections to exemptions or discharge have been filed, and whether any preference recovery actions are pending. The Court has reviewed the docket and sees that there are no objections contemplated by this factor, nor are there any preference actions. The Chapter 7 Trustee has, indeed, filed virtually nothing in the case. This factor weighs in favor of dismissal.

The difficulty with balancing factors becomes apparent when there is an even number of factors and they end up weighing equally on each side of the determination. Here, we have three factors weighing in favor of dismissal and three against. Thus, this Court must return to whether, in the totality of the circumstances here, the Latteas have shown "cause" for their voluntary dismissal. In looking at the "big picture," this Court is not convinced that "cause" has been demonstrated. The Latteas appear to have simply decided that they want to end their bankruptcy case and move against Vanderbilt in a different forum. Errors in judgment or the changing of one's mind does not constitute "cause" to support a voluntary dismissal under § 707(a), as noted in the caselaw discussed previously. In essence, the Latteas would be dismissing this case so they could re-file another proceeding in a different court. As non-binding precedent states, the dismissal of a Chapter 7 case just to re-file a new one is not acceptable. Although the present situation before the Court differs slightly here, in that the re-filing would take place in a new forum, it remains that the Latteas made it to their preferred forum (District Court) in this case and they were sent away. They seek to dismiss this case, which was remanded back to bankruptcy court, and try their hands, again, in the District Court. The Latteas filed their case almost two years ago and seek to dismiss now that the Chapter 7 Trustee and Vanderbilt have

expended two years of effort in administering and litigating in the case. And, yes, the Latteas would derive benefit from dismissing their bankruptcy case, but no, that is not enough to constitute "cause" for voluntary dismissal.

Furthermore, the Latteas have not proven that dismissal under § 707(a) will not prejudice creditors in the instant bankruptcy case. As stated by the *Turpen* court, "[c]reditors can incur prejudice if the motion to dismiss is brought after the passage of a considerable amount of time and they have been forestalled from collecting amounts owed to them," and, if "the automatic stay has prevented creditors from collecting their debts for more than two years," then "send[ing] them back to their state court remedies at this point would constitute prejudice." *Turpen*, 244 B.R. at 435. That language reflects almost exactly the situation here; the case has been pending for one month shy of two years and each creditor involved has been prevented from collecting on their debts due to the automatic stay.

Based on the foregoing, this Court finds that voluntary dismissal is not appropriate and, thus, denies the Latteas Motion to Dismiss.

### B. The MFR

The only other motion pending before this Court is Vanderbilt's MFR. The Court moves to it now.

#### 1. Applicable Law

Motions for Relief from the Automatic Stay are governed by Bankruptcy Code § 362(d). One of the fundamental elements of bankruptcy protection, under any chapter, is the automatic stay. Section 362 of the Bankruptcy Code outlines the stay and its applicability. It is a powerful tool, and one that is essential in furthering the "fresh start" policy of the Code. Importantly, it

allows some "breathing room" for debtors so they can attempt a reorganization without the financial pressures that drove them into bankruptcy. *Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198, 200 (4th Cir. 1988) (citing HOUSE REP. NO. 95-595, 95th Cong. 1st Sess. 340-1 (1077) and SENATE REP. NO. 95-989, 95th Cong. 2d Sess. 54-44 (1978)). However, in certain situations, the stay can be lifted to allow entities to proceed against a debtor or property of a debtor. One of those instances is contained in 11 U.S.C. § 362(d), which states that

> [o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section
> . . .
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ; or
> > (2) with respect to a stay of an act against property under subsection (a) of this section if –
> > > (A) the debtor does not have an equity in such property; and
> > > (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d). These sections apply to any property of the estate. 11 U.S.C. § 362(a)(3). "The decision whether to modify, condition or annul the bankruptcy stay under section 362(d) is committed to bankruptcy court discretion and is to be determined by examining the totality of the circumstances . . . ." *In re Freeman*, 352 B.R. 628, 632 (Bankr. N.D. W. Va. 2006) (quoting *In re Brown*, 311 B.R. 409, 412 (E.D. Pa. 2004)).

If a motion for relief is pursued under § 362(d)(1), the moving party must make an initial showing of "cause." *In re Sonnax Indus., Inc.* 907 F.2d 1280, 1285 (2d Cir. 1990). Then, the burden shifts to the debtor to demonstrate that adequate protection is possible. *Id.*

When lifting the stay for "cause" under § 362(d)(1), a court must exercise its discretion and "consider what constitutes 'cause based on the totality of the circumstances in each particular case.'" *In re Behanna*, 381 B.R. 631, 643 (Bankr. W.D. Penn. 2008) (citing *In re Wilson*, 116 F.3d

87, 90 (3d Cir. 1997)); *see also Claughton v. Mixson*, 33 F.3d 4, 5 (4th Cir. 1994) ("Because the Bankruptcy Code provides no definition of what constitutes "cause," the courts must determine when discretionary relief is appropriate on a case-by-case basis."). That means "balanc[ing] potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." *In re 210 West Liberty Holdings, LLC*, 400 B.R. 510, 514 (Bankr. N.D. W. Va. 2009) (quoting *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992)).

"[T]he term 'cause' is a broad and flexible concept which permits a bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations." *In re Indian River Estates, Inc.* 293 B.R. 429, 433 (Bankr. N.D. Ohio 2003) (citing *In re Texas State Optical Inc.*, 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995)); *Behanna*, 381 B.R. at 643; *see also Claughton*, 33 F.3d at 5. Adequate protection may be provided in the form of an equity cushion, a replacement lien, or regular payments to the secured creditor. *In re ASI Reactivation, Inc.*, 934 F.2d 1315, 1320 (4th Cir. 1991); *In re Orlando Coals, Inc.*, 6 B.R. 721, 723-24 (Bankr. S.D. W. Va. 1980). "A debtor's history or making or failing to make payments under a bankruptcy plan, as well as its history of payments under a promissory note, are both significant when determining whether there is adequate protection." *McCullough v. Horne (In re McCullough)*, 495 B.R. 692, 698 (Bankr. W.D.N.C. 2013).

In prosecuting a motion for relief under § 362(d)(2), the burden of proof first lies with the party requesting such relief. 11 U.S.C. § 362(g). The movant must show that the debtor has no equity in the subject property. *Id.* Following such a showing, the burden shifts to the debtor (or the party opposing the relief) on all other issues. *Id.*

When evaluating relief from the stay under § 362(d)(2), the Court must first evaluate the existence of equity in the debtor's property.  It is a factual question that must be decided in two parts: (1) what is the value of the real estate; and (2) what is the amount of the debt encumbering the property.  *Estate Const. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 219 (4th Cir. 1994).  "If the debt is greater than or equal to the value of the realty, the stay may be properly lifted.  *Estate Const. Co.*, 14 F.3d at 219; *see also In re Sutton*, 904 F.2d 327, 330 (5th Cir. 1990).

After finding that there is no equity, courts must move to the evaluation of whether property is "necessary" for an effective reorganization.  What is required is "not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect." *In re McNeely*, 366 B.R. 542, 545 (Bankr. N.D. W. Va. 2007) (quoting *United Sav. Ass'n of Tex. V. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 376-77 (1988)).  In Chapter 7 cases, the second portion of the legal standard essentially does not apply; "since this is a case for liquidation under [C]hapter 7 of the Bankruptcy Code there is no reorganization effort present." *In re Woodberry*, 383 B.R. 373, 379 (Bankr. D.S.C. 2008); *see also In re Ballard*, 5 B.R. 570, 572 (Bankr. E.D. Va. 1980) ("The present case filed in this Court is a Chapter 7 liquidation and the provisions of subsection (d)(2)(B) are inapplicable."); *Kitchen v. Boyd (In re Newpower)*, 233 F.3d 922, 935 (6th Cir. B.A.P. 2000).

### 2. Analysis

The Court need not evaluate Vanderbilt's MFR under both § 362(d)(1) and (d)(2), since they are an "either, or" proposition. An application of § 362(d)(2) to the matter at hand is sufficient to adjudicate the MFR and is both straightforward and succinct.

The facts are clear. The Latteas value the Property (described as "2006 Fleetwood and property") in their schedules at $27,826. They state the amount of Vanderbilt's claim as $98,936.22. In their Response, they do not dispute these numbers. In Vanderbilt's MFR, it lists the Property value as the amount stated by the Latteas in their schedules: $27,826. Vanderbilt asserts that the current payoff of the loan is $105,080.67. The Latteas have been in arrears on their mortgage for over two years (since March 1, 2019).

The facts, plain as day, support granting Vanderbilt's MFR. There is clearly no equity in the property: the Latteas are underwater by *at least* $71,110 (if the Court uses the numbers stated in the Latteas schedules). Furthermore, because the Latteas have filed a Chapter 7 liquidation, § 362(d)(2)(B) is rendered inapplicable because there is no reorganization effort present. Thus, this Court finds that relief from the stay is warranted.

### III.

With regards to the Latteas' MTD, this Court has evaluated the factors enumerated in caselaw and has determined that there was no "cause" for dismissal shown under § 707(a), and that furthermore, that dismissal would prejudice creditors. Therefore, denial of the MTD is necessary. In its straightforward evaluation of the MFR, the Court determines that relief from

the stay is warranted under § 362(d)(2) because there is clearly no equity in the Property and the Property is not necessary for an effective reorganization. Accordingly,

**IT IS ORDERED** that the Latteas MTD be, and is hereby, **DENIED.**

**IT IS FURTHER ORDERED** that Vanderbilt's MFR be, and is hereby, **GRANTED.**